IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| AMY MICHELLE MITCHELL-GOODWIN, | ] ] ] |
| Plaintiff, | ] ] |
| vs. | ] 4:10-CV-02152-LSC ] |
| MICHAEL J. ASTRUE, | ] ] |
| Commissioner, Social Security Administration, | ] ] ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

Plaintiff, Amy Michelle Mitchell-Goodwin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was thirty-six years old at the time of the Administrative Law Judge's

("ALJ's") decision, and she has at least a high school education. (Tr. at 21.) Her past work experience includes employment as a bartender, phlebotomist and police dispatcher. (*Id.*) Plaintiff claims that she became disabled on July 2, 2006, due to degenerative disease in her lower back, neck and knees, slowed brain processes from head trauma; major depressive disorder without psychotic tendency; lumbar fusion and two knee surgeries. (Tr. at 166.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2007. (Tr. at

17.) The ALJ further determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 2, 2006 through her date last insured of June 30, 2007.[1] (*Id.*) According to the ALJ, Plaintiff had the following severe impairments: "status post lumbar surgery secondary lumbar disc disease and status post right knee surgery secondary to torn medial meniscus." (*Id.*) The ALJ found that these impairments, either alone or in combination, did not meet or medically equal any of the listed impairments in Subpart P, Appendix 1. (Tr. at 19.)

The ALJ further determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), subject to the following limitations:

> She could lift and carry 10 pounds occasionally and less than 10 pounds frequently. During an 8-hour workday, she would have been limited to sitting, standing and walking a total of 6 hours each, but should have been able to exercise a sit/stand option. She had an occasional ability to crawl and frequent ability to balance and climb stairs and ramps limited to 1 flight. The claimant was unable to climb ladders, ropes, or scaffolds, and was precluded from activities requiring exposure to hazardous machinery and unprotected heights. She had no visual or manipulative limitations and experienced mild to moderate pain which was reasonably

---

[1] To establish eligibility for benefits, Plaintiff must prove she was disabled prior to the date last insured. All discussion refers to the period between the alleged onset date and the date last insured. Plaintiff's current limitations are not at issue to the extent they developed after the date last insured. The ALJ has noted that Plaintiff is currently suffering the effects of a severe motor vehicle accident which occurred six months after the date last insured. (Tr. at 21.) Injuries stemming from this motor vehicle accident are irrelevant to the determination of Plaintiff's benefits.

expected to impose mild to moderate limitations upon her ability to work.

(Tr. at 19.)

According to the ALJ, the Plaintiff was unable to perform any past relevant work. (*Id.* at 21.) She is a "younger individual," as that term is defined by the regulations, she has at least a high school education and is able to communicate in English. (*Id.*) The ALJ determined that "the transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, through the date last insured, there were a significant number of jobs in the national economy that the Plaintiff was capable of performing, such as accounting clerk, data entry clerk, and general clerical worker. (*Id.* at 22.) The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 2, 2006, the alleged onset date, through June 30, 2007, the date last insured. (*Id.*)

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff contends that the ALJ's decision should be reversed and remanded for two reasons. First, she believes the ALJ did not afford proper weight to the testimony of the Plaintiff's treating physician, Dr. Daniel Sparks. (Doc. 8.) Second, the Plaintiff argues that the ALJ should have obtained testimony from a medical expert to determine whether the Plaintiff was disabled prior to the date last insured. (*Id.*)

A.   Evidence from a Treating Physician

Plaintiff contends that the ALJ did not afford proper weight to the opinion of Dr. Sparks regarding the Plaintiff's impairments and the date on which they existed. (*Id.*) The source of Dr. Sparks' opinion is the Physical Capacities Evaluation of September 3, 2009. (*Id.*) Though the Plaintiff did not visit Dr. Sparks until six months after the date last insured, Dr. Sparks indicated that the limitations he described on the Physical Capacities Evaluation were in existence on the alleged onset

date. (Tr. at 640.) Plaintiff argues that had the ALJ afforded proper weight to Dr. Sparks' opinion, the ALJ would have been required to find that there were no jobs in the national or local economy the Plaintiff could have performed. (*Id.*) Plaintiff bases this conclusion on testimony given by the Vocational Expert ("VE"). (Tr. at 81-82.) Asked to consider the Plaintiff's RFC in light of the Physical Capacities Evaluation, the VE stated that no jobs would have existed in the national economy that the Plaintiff could have performed.[2] (*Id.*)

The ALJ determined that Dr. Sparks' opinion was not supported by the objective medical evidence, and that the Physical Capacities Evaluation did not bear on Plaintiff's abilities during the relevant time. (*Id*. at 21.) Specifically, the ALJ afforded no significant weight to the opinion of Dr. Sparks for three reasons: (1) objective clinical and diagnostic findings support a finding contrary to Dr. Sparks'

---

[2] This testimony was in a response to a hypothetical question posed to the VE, accepting the opinion of Dr. Sparks as to the Plaintiff's pain and limitations on the alleged onset date. (Tr. at 81-82.) The ALJ disregarded the VE's response to Plaintiff's hypothetical and relied upon the VE's determination that, based upon the medical record as a whole, there were numerous job in the local and national economy that the Plaintiff could have performed. (*Id.*) The Eleventh Circuit has held that the Commissioner may disregard responses to hypothetical questions not supported by the medical record as a whole. *See Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986); *see also Ingram v. Comm'r of Soc. Sec..*, 496 F.3d 1253, 1270 (11th Cir. 2007).

opinion, (2) Dr. Sparks opinion is not supported by any additional evidence, and (3) Plaintiff's daily activities were inconsistent with Dr. Sparks' testimony. (*Id.*) The ALJ had good cause to afford the opinion of Dr. Sparks little weight.

The testimony of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined that 'good cause' exists when the: (1) treating physician's opinion [is] not bolstered by the evidence; (2) evidence support[s] a contrary finding; or (3) treating physician's opinion [is] conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6).

The ALJ determined that the objective clinical or diagnostics findings from the relevant period do not support the opinion of Dr. Sparks. (Tr. at 19-21.) The ALJ found that the medical record supported a finding that the Plaintiff "experienced mild to moderate pain which was reasonably expected to impose mild to moderate

limitations upon her ability to work." (Tr. at 19.) Prior to the date last insured, the Plaintiff suffered from pain requiring both back and knee surgery. (*Id.* at 19-21.) The ALJ determined that records related to Plaintiff's 2003 back surgery, including multiple MRIs, showed a "normal post-op lumbar spine." (*Id.* at 20.) In regards to Plaintiff's September 2006 knee surgery, the ALJ found that following the surgery the Plaintiff "was assessed as having 1-2 pain levels which is consistent with only mild pain." (*Id.*)

In considering the objective clinical and diagnostic findings, the ALJ highlighted the records from Dr. Clay Rowe, one of Plaintiff's many physicians, covering the period from August 2006, through September 2007. (*Id.* at 20-21.) During that time, the Plaintiff reported no musculoskeletal complaints and "was consistently negative for headache, dizziness, joint and muscle pain or swelling, and decreased joint mobility." (*Id.* at 21.) On multiple reports, Dr. Rowe reported that the Plaintiff had a "full range of motion of cervical spine, a coordinated and smooth gait, and good grip strength bilaterally." (*Id.*) Other medical evidence "reflects no treatment for depression, headaches, or hand, neck, or back pain during the relevant period." (*Id.*

at 20.) Contrary to the opinion of Dr. Sparks, this evidence supports the ALJ's finding that the Plaintiff did not suffer a totally disabling impairment prior to the date last insured.

Additional medical evidence from after the date last insured is inconsistent with the opinion of Dr. Sparks. Plaintiff first visited Dr. Sparks following a severe motor vehicle accident in December 2007, six months after the date last insured. (*Id.* at 18.) Dr. Sparks continued to treat Plaintiff throughout 2008 and into 2009, performing arthroscopic knee surgery on the Plaintiff's left knee on February 27, 2008 and again on December 9, 2008. (*Id.* at 376-377, 385-386, 472-479.) Dr. Sparks' subsequent Physical Capacities Evaluation detailed Plaintiff's physical abilities, pain and limitations as applicable to an eight hour workday, and indicated that the Plaintiff's impairments existed at the described level of severity since July 2, 2006, the alleged onset date. (*Id.* at 640.) Dr. Sparks, however, offered no supporting evidence for this conclusion, and the ALJ notes that it appears to have been typed in by Plaintiff's council. (*Id.* at 21.) For these reason, the ALJ properly concluded that Dr. Sparks' opinion is inconsistent with the other evidence in the medical record.

Finally, the Plaintiff's daily activities during the relevant time do not support Dr. Sparks' opinion. In addition to the medical evidence, the ALJ was correct to

consider Plaintiff's activities when evaluating the Plaintiff's pain and limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2008); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). The Plaintiff testified that during the alleged disability period she rode a motorcycle, attended college, and worked part-time as a bartender. (Tr. at 21.) These activities do not support a finding of totally disabling impairment. For the aforementioned reasons, substantial evidence supports the ALJ's decision to afford no significant weight to the opinion of Plaintiff's treating physician, Dr. Sparks.

B.   Testimony from a Medical Expert

Plaintiff next contends that the ALJ failed to comply with Social Security Ruling ("SSR") 83-20,[3] and that this case should be reversed and remanded with directions to the Commissioner to obtain expert testimony as to the whether the Plaintiff's medical problems were severe and disabling prior to the date last insured. (Doc. 8.) SSR 83-20 recognizes that the onset date of a disability is often critical and discusses when the ALJ is required to call on a medical advisor to assist in the determination of the onset date.

In disabilities of nontraumatic origin, SSR 83-20 requires the consideration of the applicant's allegations, work history, if any, and the medical and other evidence

---

[3] Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR83-20-di-01.html

concerning impairment severity. SSR 83-20 has been found to apply in cases where no determination of disability has been made by the ALJ. *See Grebenick v. Chater,* 121 F.3d 1193, 1201 (8th Cir. 1997). When SSR 83-20 is applicable, the Commissioner must infer the onset date of the disability based upon an informed judgment. *See Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir.1993). Informed judgment does not require consultation of a medical advisor in every case. *See Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir.1995). Though the Eleventh Circuit has yet to determine when the services of a medical advisor must be obtained in cases where the ALJ has not made a finding of disability, circuits that have addressed the issue have concluded that a medical advisor is only necessary when medical evidence does not exist for the period in question and the existing evidence is ambiguous as to the onset date. *See Harrington v. Astrue*, No. 8:08-cv-1702-T-TBM, 2009 WL 3232347 (M.D. Fla. Sept. 29, 2009).

In the present case, there is an abundance of medical evidence from the period in question. The ALJ considered the records of multiple physicians visited by the Plaintiff beginning in July 2003, three years before the alleged onset date, until

September 2009, two years after the date last insured. (Tr. 18-19.) The medical record was adequate to permit a finding that the Plaintiff was not disabled prior to the date last insured, without requiring the testimony of a medical advisor.

IV.  Conclusion.

Upon review of the administrative record, and considering all of Ms. Mitchell-Goodwin's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 22nd day of December 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458